UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION


NEIL C. JOHNS,

                    Petitioner,

vs.                                              CASE NO. 8:10-cv-494-T-27TGW
                                            CRIM. CASE NO. 8:07-cr-497-T-27TGW

UNITED STATES OF AMERICA,

                    Respondent.
_____/

## ORDER

**BEFORE THE COURT** is Petitioner's Motion to Vacate, Set Aside or Correct Sentence

pursuant to 28 U.S.C. § 2255 (CV Dkt. 1), the Government's Response (CV Dkt. 8) and Petitioner's

Reply (CV Dkt. 13).  Upon consideration, Petitioner's motion is DENIED.

### Procedural Background

Petitioner was charged by an indictment with conspiracy to distribute and possess with intent

to distribute five kilograms or more of a mixture or substance containing a detectable amount of

cocaine, in violation of 21 U.S.C. §§ 841(b)(1)(A)(ii) and 846 (Count One), attempt to distribute and

possession with intent to distribute five kilograms or more of a mixture or substance containing a

detectable amount of cocaine, in violation of 21 U.S.C. §§ 841(b)(1)(A)(ii) and 846 (Count Two),

and carrying and possessing one or more firearms during, in relation to, and in furtherance of the

conspiracy, in violation of 18 U.S.C.§ 924(c)(1).  (CR Dkt. 16).  On March 12, 2008, Petitioner

pleaded guilty pursuant to a written plea agreement to the conspiracy charge.[1]  (CR Dkts. 112, 121,

188).   On July 29, 2008, Petitioner was sentenced to two hundred sixty-two (262) months

imprisonment to be followed by five years of supervised release (CR Dkt. 158).  Petitioner appealed

his conviction and sentence.   On March 12, 2009, the United States Court of Appeals for the

Eleventh Circuit rejected Petitioner's appeal.  (CR Dkt. 203).

Petitioner signed his Section 2255 motion on February 10, 2010.  The Respondent makes no

challenge to the timeliness of the motion.  Petitioner raises two grounds for relief:

**Ground One:**   Counsel rendered ineffective assistance by advising Petitioner to agree to the appeal waiver included in the written plea agreement; and

**Grounds Two:**   Counsel rendered ineffective assistance by both failing to procure a copy of the revised presentence investigation report and by failing to object to the recommendation in the presentence investigation report that Petitioner not receive a mitigating role reduction in the calculation of his offense level

### Facts[2]

Between at least in or around September 2007 and on or about November 29, 2007, at all times in the Middle District of Florida, the defendant, NEIL C. JOHNS, conspired with other individuals - - including but not limited to, Neil C. Morris, Dennis E. Ray, Lawaun P. Wright, and Lance D. Hill - - to possess with the intent to distribute, and to distribute, five (5) kilograms or more of cocaine.

During the course and in furtherance of this conspiracy, the defendant's co-conspirators participated in a number of recorded meetings with undercover agents to plan an armed home invasion-style robbery of well over five (5) kilograms of cocaine from a purportedly disgruntled drug courier and the stash house from which this fictitious courier was allegedly obtaining his cocaine.

One of these meetings occurred on or about November 13, 2007, at a warehouse in Tampa, FL and was attended by the [sic] Morris, Ray, Wright, and three (3) undercover agents, one

---

[1]  The Government dismissed Counts Two and Three.  (CR Dkt. 112).

[2]  The factual summary derives from the presentence investigation report to which Petitioner made no objection to the summary of offense conduct.

2

(1) of whom was posing as the disgruntled courier who was helping to orchestrate the home invasion. During the course of this meeting, the undercover agent posing as the courier advised Morris, Ray, and Wright of the details of the robbery, including the fact that he (the courier) was employed by a drug trafficking organization to transport multi-kilograms of cocaine, and that he had seen twenty-two (22) to thirty-nine (39) kilograms of cocaine stored in a stash house maintained by the organization. After hearing these details, Morris, Ray, and Wright expressed great interest in robbing the stash house, with Ray even offering to shoot the courier in the leg to make it look like he had nothing to do with the robbery.

Another meeting occurred on or about November 28, 2007, at a restaurant in Pinellas Park, FL and was attended by Morris, Ray, and two (2) undercover agents. During the course of this meeting, Morris and Ray advised that they were ready to proceed with the robbery, which was scheduled for the next day. Morris and Ray advised in this regard that they anticipated that one "team" would take the kilograms of cocaine being transported by the courier, while another "team" would go inside the stash house to steal the cocaine being stored there. Morris and Ray also confirmed that Wright would be assisting in the robbery, and that they had already obtained the weapons needed to carry out the home invasion.

The next day, on or about November 29, 2007, two (2) of the undercover agents met with Morris and Ray in a Lowe's parking [lot] in St. Petersburg, FL to finalize the plans for the home invasion, which was to be conducted later that afternoon. At the beginning of this meeting, Morris and Ray assured the undercover agents that they were prepared to go forward with the robbery, that their "crew" was around the corner," and that they had the weapons necessary to conduct the robbery. To prove the latter point, Ray left the area and returned with a Bersa .45 caliber semi-automatic pistol, model Firestorm, serial number 504174, which Ray then pulled from his waist, loaded in front of the undercover agents, and asked if the undercover agents needed to hear him fire it. Ray was also accompanied upon his return by Wright, who was likewise carrying a loaded weapon. That firearm was later identified as a Springfield Armory .45 caliber semi-automatic pistol, model SA-XP, bearing serial number US 727384.

While Ray was away, the remainder of his and Morris'[s] "crew" - - consisting of the defendant and Hill - - arrived at the Lowe's parking lot in a vehicle being driven by another individual. After Morris had an opportunity to review some of the details of the home invasion with the defendant and Hill, one (1) of the undercover agents approached the vehicle and discussed certain aspects of the robbery with the defendant and Hill as well, including that there were fifteen (15) to twenty (20) kilograms of cocaine inside the stash house, and that the courier was not to get hurt or shot during the robbery. Both the defendant and Hill - - who had discussed the robbery before arriving at the Lowe's - - indicated that they understood these instructions and that they were "straight."

3

Law enforcement agents thereafter arrested the defendant and his co-conspirators and seized the aforementioned Bersa .45 caliber and the Springfield Armory .45 caliber firearms after Ray and Wright attempted to discard them while being apprehended.

Following his arrest, the defendant was advised of his Miranda rights and, after waiving same, stated, in sum and substance among other things, that he was aware of the nature of the conspiracy when he and Hill arrived at the Lowe's parking lot, that Morris had told him in the Lowe's parking lot that they were going to rob the courier of six (6) kilograms of cocaine, that the defendant had then asked Morris whether he had a "tool" (i.e., firearm), and that Morris had replied in the vicinity [sic].

(PSR, pp. 14-17).

## Discussion

Petitioner's written plea agreement includes an express waiver of his right to appeal or collaterally attack his sentence:

> The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the right to appeal defendant's sentence or to challenge it collaterally on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by Title 18, United States Code, Section 3742(b), then the defendant is released from his waiver and may appeal the sentence as authorized by Title 18, United States Code, Section 3742(a).

(CR Dkt. 112, p. 12).

An appeal waiver in a plea agreement is enforceable if the waiver is made knowingly and voluntarily. *United States v. Weaver*, 275 F.3d 1320, 1333 (11th Cir. 2001); *United States v. Bushert*, 997 F.2d 1343, 1350-51 (11th Cir. 1993). An appeal waiver will be enforced if the Government demonstrates either: (1) that the district court specifically questioned the defendant

4

about the waiver during the plea colloquy, or (2) that the record clearly shows that the defendant otherwise understood the full significance of the waiver. *Williams v. United States*, 396 F.3d 1340, 1341 (11th Cir. 2005); *United States v. Buchanan*, 131 F.3d 1005, 1008 (11th Cir. 1997). A knowing and voluntary waiver precludes a defendant from collaterally attacking his conviction in a Section 2255 motion. *Williams v. United States*, 396 F.3d at 1342. The waiver is enforceable against a claim of ineffective assistance of counsel at sentencing because "a contrary result would permit a defendant to circumvent the terms of the sentence-appeal waiver simply by recasting a challenge to his sentence as a claim of ineffective assistance, thus rendering the waiver meaningless." *Williams*, 396 F.3d at 1342.

During the plea colloquy Petitioner specifically averred that he understood the consequences of the appeal waiver, including the provision barring a collateral attack:

| | |
|---|---|
| Court: | Okay. Well, then there are initials at the bottom of each page [of the plea agreement], but let me - - did you place your initials at the bottom of each page . . . ? |
| Defendant: | Correct. |
| Court: | And does that indicate that you and your lawyer have gone over each page of the plea agreement? |
| Defendant: | Correct. |
| Court: | After you and your lawyer went over each page of the plea agreement did you understand each page of the plea agreement? |
| Defendant: | So far. |
| Court: | What do you mean by that? Either you understood it or you didn't. If you didn't, then we're not going forward. |
| Defendant: | Correct. |

Court:          Did you understand each page of the plea agreement?

Defendant:      Yes.

. . . .

Court:          Was there ever a point when you read the plea agreement by yourself?

Defendant:      No, sir.

Court:          Okay.  You went over that with your lawyer as well?

Defendant:      Correct.

. . . .

Court:          You've been represented by [trial counsel].  Have you had a full opportunity
                to discuss this case with him?

Defendant:      Yes, sir.

Court:          With respect to your decision to plead guilty[,] do you think you need any
                more time to discuss this matter with him?  Okay.  Let me tell you this.  I
                didn't schedule this and I'm in no hurry.  If you're not ready to go forward
                today, and I'm not sure you are, we'll put it off to some other day.  So if you
                want to think about it some more, if you want to talk to [trial counsel] some
                more, it's all right [sic] with me.

Defendant:      I just need a brief moment to speak with [counsel].

Court:          Okay.

(Whereupon, a discussion was held off the record at this time and then the proceedings
resumed as follows:)

Court:          Do you want to go forward now or do you want to think about it some more?

Defendant:      Go forward with it now.

Court:          Okay.  Are you satisfied with the way your lawyer has represented you in this
                case?

Defendant:      Yes, sir.

| | |
|---|---|
| Court: | Is there anything you think he should have done that he did not do in this case? |
| Defendant: | No, sir. |

. . . .

| | |
|---|---|
| Court: | I also want to emphasize paragraph five [of the plea agreement]. First, I will tell you that even though you are pleading guilty, you have a right to appeal your sentence, but under paragraph five you limit the extent to which you can appeal your sentence. |
| | Under paragraph five you can only appeal if the sentence exceeds the guideline range as determined by the court under the guidelines, or the sentence exceeds that statutory maximum penalty of life in prison, or the sentence violates the Eighth Amendment to the Constitution which prohibits excessive fines and cruel and unusual punishment. |
| | In particular, what you cannot appeal is the way the court calculates the sentencing guidelines. Do you understand that? |
| Defendant: | Yes, sir. |
| Court: | And that includes being unable to come back and complain that your lawyer was somehow ineffective with respect to the guideline calculation. Do you understand that? |
| Defendant: | Yes, sir. |
| Court: | Do you have any question about that provision? |
| Defendant: | No, sir. |
| Court: | And are you agreeing to it freely and voluntarily as part of this plea agreement? |
| Defendant: | Yes, sir. |

(CR Dkt. 188, pp. 7, 8, 14, 17-18, 31-33).

Upon completion of the full colloquy, the magistrate judge found that Petitioner freely and voluntarily entered his plea. (CR Dkt. 188, pp. 36-37).

7

**Ground One**

Petitioner contends that his trial counsel rendered ineffective assistance by advising Petitioner to agree to the appeal waiver "when counsel knew (or should have known) [that the] waiver could not benefit [Petitioner] and [Petitioner] was not fully advised of [the] prejudice [the] waiver could cause before [the] waiver was entered, resulting in [the] waiver being involuntary." (CV Dkt. 1, p. 7). Petitioner claims that counsel "explained the waiver as if [Petitioner] had no choice but to accept the waiver because of the language of his plea agreement." He further claims that counsel "did not advise him of how the waiver may affect [Petitioner's] option to challenge sentencing errors (or P.S.[R]. computations) if he failed to obtain 5K1 or Rule 35 deductions, as the plea agreement presumes." Petitioner states that, "[s]imply put, counsel had a duty to say, 'Hey!  You understand if you enter this waiver and fail to secure deduction through cooperation and if we make a mistake at sentencing, do you understand you are going to have to live with it[?]" (CV Dkt. 1, p. 8). Petitioner argues that if he had understood that the waiver provision of the plea agreement was not mandatory, he would not have entered the waiver and that counsel's error "caused him to involuntarily and unintelligently waive [his] right to appeal sentencing errors." (CV Dkt. 1, p. 9). Absent counsel's errors, Petitioner claims, a reasonable probability exists that he would have successfully appealed the denial of a minimum role reduction and would have received a lesser sentence.

To the extent that Petitioner challenges the validity of his appeal waiver based upon counsel's alleged ineffective assistance, ground one warrants a review on the merits. *See Patel v. United States*, 252 Fed. Appx. 970, 974 (11th Cir.2007) (an appeal waiver does not bar a § 2255 claim that either the defendant's plea or the appeal waiver itself is invalid due to ineffective assistance of

8

counsel). *See also United States v. White*, 307 F.3d 336, 341 (5th Cir.2002) (indicating that "a waiver of appeal may not be enforced against a section 2255 petitioner who claims that ineffective assistance of counsel rendered *that waiver* unknowing or involuntary"); *United States v. Cockerham,* 237 F.3d 1179, 1187 (10th Cir.2001) (holding that "a plea agreement waiver of post-conviction rights does not waive the right to bring a § 2255 petition based on ineffective assistance of counsel claims challenging the validity of the plea or the waiver").

Petitioner produces no evidence to substantiate his claim that he involuntarily entered his appeal waiver. Petitioner signed the written plea agreement in which he admitted that he entered his plea agreement (which includes the appeal waiver) freely and voluntarily without threat or coercion. (CR Dkt. 112, pp. 13-14). During the plea colloquy the magistrate judge advised Petitioner of the terms of the plea agreement, including the appeal waiver. Petitioner averred under oath that he understood the waiver, the limited circumstances in which he could appeal his sentence, and that he agreed to the waiver freely and voluntarily as part of his plea agreement.[3] (CR Dkt. 188, pp. 31-33). Petitioner during neither the plea colloquy nor the sentencing hearing[4] alerted the court to any

---

[3] The United States Court of Appeals for the Eleventh Circuit confirmed on direct appeal the validity of the appeal waiver:

> Appellee's motion to dismiss this appeal in part as to the sentencing issues raised by Appellant, based on a valid appeal waiver contained in Appellant's plea agreement, is GRANTED. Despite Appellant's arguments to the contrary, the record shows that the appeal waiver was knowing and voluntary. *See U.S. v. Benitez-Zapata*, 131 F.3d 1444, 1446 (11th Cir. 1997).

(CR Dkt. 203, p. 2).

[4] The court reiterated at the sentencing hearing the implication of the appeal waiver:

> THE COURT:   You have ten days to appeal the judgment and sentence of the court. If you cannot afford a lawyer, one will be appointed to represent you on appeal, and the clerk will accept your appeal without payment of the filing fee.
>
> The plea agreement contains an appeal waiver clause which you need to discuss with [counsel]
> (continued...)

misunderstanding of the appeal waiver. Petitioner presents no evidence establishing either that he did not want to proceed with his plea or that he misunderstood the appeal waiver. The unsubstantiated allegations in this motion to vacate fail to overcome the strong presumption of verity afforded Petitioner's sworn statements made during the plea colloquy. *See Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977) ("[T]he representations of the defendant [at a Rule 11 plea hearing], as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity.").

Even assuming, *arguendo*, that counsel performed deficiently by failing to explain the appeal waiver as Petitioner now suggests, Petitioner fails to establish resulting prejudice. His arguments that absent counsel's error, (1) a reasonable probability exists that he would have successfully appealed alleged errors in the presentence investigation report and, (2) that he would have received a lesser sentence, lack merit. Petitioner fails to specify any error in his presentence investigation report. He presents no evidence substantiating his allegation that he would have received a lesser sentence if counsel had further advised him about the appeal waiver. Consequently, Petitioner

---

[4](...continued)

> that is, the advantages and disadvantages of filing an appeal in light of that. And, as importantly, in light of the possibility of earning a Rule 35 motion and what impact an appeal could have or may have on any policies of the United States Attorney's Office concerning a Rule 35 motion.
>
> Listen carefully to [counsel]. Whatever your decision is, he is duty-bound to follow it. If you tell him to appeal, he will; if you tell him not to, he'll document his file. So when you guys discuss this, discuss not only the appeal waiver but, as well, the possibility of a Rule 35 among other advantages and disadvantages. Do you have any questions about that?

DEFENDANT:   No, sir.

(CR Dkt. 181, pp. 31-32).

cannot obtain relief on this claim of ineffective assistance of counsel because the requirements of *Strickland* remain unsatisfied. *See Strickland v. Washington*, 466 U.S. at 691-92.

**Ground Two**

Petitioner claims that his trial counsel rendered ineffective assistance at the sentencing hearing by failing to have a copy of the revised presentence investigation report ("PSR") and by not objecting to Petitioner not receiving a minor role reduction. He further argues that counsel rendered ineffective assistance by not arguing that Petitioner's criminal history score over-represented Petitioner's prior conduct.[5]

A presentence report was initially prepared in May 2008. After preparation of that report and while Petitioner was on pretrial release, he was arrested on June 21, 2008, for domestic violence, false imprisonment, and depriving the victim of the use of 911. (CR Dkt. 139). A revised presentence report was prepared on June 24, 2008, to include this arrest and a recommendation by

---

[5] Petitioner supports ground two by attaching various pages from his appellate brief. (CV Dkt. 1, pp. 11-19). These pages include the conclusion from that brief which states:

> The Defendant was counseled to entered [sic] a Plea Agreement, not knowingly, and without worth to the Defendant. The sentence was not reasonable and skirted a violation of the Eighth Amendment; therefore, the waiver was not applicable. Counsel was ineffective in not objecting to the non-existent PSR and not bringing to light the over-representation of criminal history not to mention the mitigating role in the offense. The result was an unreasonable sentence considering the circumstance.

> The sentence in this case is too sanguinary and cruel. Prosecutors are paid to be relentless. Courts are bound to go by the book. The Supreme Court cannot reach down and undo a single sentence without potentially overturning a whole branch of law. Therefore[,] a reasonable sentence must emanate from this Court or risk never seeing the light of reason itself. We request a remand to establish a reasonable sentence by any means this Honorable Court would deem reasonable, appropriate, and necessary.

(CV Dkt. 1, pp. 18-19). Although Petitioner asserts in ground two only an ineffective assistance of counsel claim based on counsel's failure to have a current copy of the presentence report and his failure to argue that Petitioner should have received a minor role reduction, to the extent that ground two of this motion can be construed to assert additional arguments based on the conclusion from the appellate brief, no relief is warranted. What Petitioner presents is a verbatim copy of the arguments that the Eleventh Circuit has already rejected on direct appeal and he offers no evidence demonstrating entitlement to post-conviction relief based on the same arguments.

the probation officer that Petitioner not receive an adjustment for acceptance of responsibility. (PSR, pp. 6, 7). When Petitioner appeared for sentencing on July 29, 2008, counsel had not received the revised presentence report. The court afforded Petitioner an opportunity to review the revised PSR with counsel and counsel made a lengthy argument that Petitioner was entitled to a reduction for acceptance of responsibility despite his new arrest:

> THE COURT: All right. I've received a presentence report prepared by the United States Probation Office. In this case, Mr. Johns entered a guilty plea pursuant to a plea agreement to Count One. Count One charges him with conspiracy to possess with intent to distribute five or more kilograms of cocaine. His guilty plea was accepted, and he has been adjudicated guilty of that offense. The addendum to the presentence report indicates that there are no unresolved objections to the report or the application of the guidelines. [Prosecutor], is that correct?
>
> [PROSECUTOR]: That is, Your Honor.
>
> THE COURT: [Counsel]?
>
> [COUNSEL]: Your Honor, there's only one objection, and I apologize. I was just advised that there's a second and more recent PSR. My -- the one I've been referring to is from May 30th, 2008, and I -- I don't have a more recent copy.
>
> But it was pointed out to me that because of my client's recent arrest, that they were requesting that he not receive acceptance of responsibility. And -- and basically that's the only objection that I would argue to the court. And I apologize for not having filed a written objection, but I was unaware that there was -- this action was being requested.
>
> THE COURT: You didn't get a copy of the June 24th - -
>
> [COUNSEL]: No, sir, I did not. Although, I understand that the only difference was the acceptance of responsibility matter that's -- mine would be Page 6, Paragraph 28, which I would expect is probably the same on the new one. I do know what it is. I just didn't know it until I walked in here. I'm not surprised, though.

12

THE COURT:      Well, Paragraph 28 reflects the new arrest of June 21st, domestic violence, false imprisonment, depriving use of a 9-1-1 and that the victim is the defendant's mother. Paragraph 36 of the June 24th report indicates that probation does not believe the defendant has demonstrated a recognition and affirmative acceptance of personal responsibility for the offense as a result of that arrest.

      Well, we have two issues. One, you should have a copy of the June 24th, 2008 version. I don't know why that isn't in your possession, but let's make sure we get a copy. Is that the only substantive change?

PROBATION OFFICER:      Your Honor, I believe the fine changes, as well, based on the offense level change but, yes, Your Honor.

THE COURT:      [Prosecutor], what's the government's position on the acceptance of responsibility? Do you have the June 24th version?

[PROSECUTOR]:      I do, Your Honor. Judge, Mr. Clark has been kind enough to provide me with circuit authority out of this circuit in *United States versus Jordan*, a per curium opinion in which the Eleventh Circuit has held that you are in a position to deny acceptance of responsibility based upon post-plea conduct such as this.

      Given that circuit authority, Judge, I find that -- or believe that the position of probation is warranted, given the facts and circumstances of the allegations. I do not hear [counsel] at this time to seek a continuance to explore this issue further. But, Judge, I just think out of an abundance of caution, [counsel], if he is seeking more time, not that that's necessarily warranted, should make that clear for the record.

THE COURT:      I've got a copy of the *Jordan* case up here I'm looking at now. Of course, I don't know in *Jordan* whether the conduct which prompted the comment was agreed to, stipulated to or not contested. The mere fact of an arrest, obviously, would not be enough.

[PROSECUTOR]:      Judge, I looked for that, as well. On page three of the opinion, that is, the slip opinion, it notes that the second argument raised by the defendant is that since he cooperated with the government regarding the offense of conviction, the denial of the reduction, that is, for acceptance of responsibility, results in him being sentenced unfairly

13

based on uncharged, comma, unproven conduct that was unrelated to the instant offense.

That suggests the very concern that you raised and, quite frankly, one that I discussed with Mr. Clark. The opinion does otherwise not make mention of any evidentiary findings levied by the district court as to that conduct.

Simply noting on page five, in conclusion, because the law of this circuit permits district courts to consider the occurrence of criminal conduct unrelated to the charged offense in evaluating acceptance of responsibility, the district court did not clearly err by denying Jordan a reduction of sentence for acceptance of responsibility based upon the unrelated state charges filed against him.

I do have as well from Mr. Clark a copy of the complaint and arrest affidavit, which you may have, as well, noting that, according to the police officer who filled out this affidavit, the defendant did prevent -- and I'm quoting -- his mother from calling 9-1-1 to report a domestic quarrel the defendant was involved in by throwing her to the ground and falsely imprisoning her in [the] residence without lawful authority, forcibly imprisoning or detaining another person, to-wit, Felicia Johns, his mother, against her will by forcing her to the ground, dragging her into a bedroom and barricading the doors to the residence. This was to prevent the victim from making a complaint to police over a domestic quarrel he was in with the mother of his child.

Lastly, Judge, I would note that the defendant does bear the burden of proof with respect to acceptance of responsibility as it pertains to this subsequent post-plea conduct.

THE COURT:        What I'm looking at and would like counsel to weigh in, is this somewhat academic based on his career offender classification under 4B1.1 as far as the guidelines is concerned?

[PROSECUTOR]:     It is not, Judge. He still would receive the reduction off of the total offense level of 37.

THE COURT:        So at least the two points?

[PROSECUTOR]:     That's correct.

THE COURT:        [Counsel]?

[COUNSEL]:        Thank you, Your Honor. Judge, I am mindful that it has always been the law that this court could deny acceptance of responsibility, and I believe that I've dealt with this before regarding post-plea action. However, I believe that the court also can take into consideration whether the defendant has, in fact, accepted responsibility and whether this criminal activity, assuming that the information is correct, and I'm not -- I'm not agreeing that the facts are accurate, but assuming they are, for sake of argument, that if this court finds that they actually did not reflect on his accepting responsibility for his prior criminal activity and actions taken to reflect rehabilitation that you can deny this motion. I would note that these are apparently probable cause affidavits, but there's no affidavit from the victims attesting to the accuracy of the information. The information are [sic] pretty much conclusions of law enforcement then and there, by physical force or intimidation.

This defendant was charged with significant drug offenses. I have been representing him from the very beginning. And I believe that there was an initial bump in the road that we overcame in discussions with Agent Code and other agents, after which I believe that he has been truthful and accurate in the information he's provided.

I know that I've spoken not only with Agent Code, who's been generous with his time with my client, and I prevailed upon him to try to do what he could to, you know, augment the investigation and take the time necessary to meet with my client and additionally other law enforcement officers in a homicide case, whom I've spoken with, also. My client has, from what everyone has told me, been truthful in the information he's provided. If he has not been, I've never been told that. I know that it's taken sometime to get these matters done, and I believe he truly has tried to toe [sic] the line in that he has been employed. Again, he's been available to cooperate.

I think there has been a combination [sic] of time in which Agent Code has had other matters he's had to deal with, but when he could, again, I believe at my request and also hopefully because of the substantial information he provided[,] did take the time to work with my client. I don't think they accomplished as much as either of them would have wanted to, but it continued, I believe, up through the time that this event occurred.

15

Clearly, this is a -- you know, a domestic matter which doesn't mean that it's any less significant than if he had accosted someone on the street.  But I just want to suggest to the court that there are obviously some emotions involved which may not have been properly controlled, as it says.  According to this, it says that he and his girlfriend were arguing, and that his mother, I guess, tried to break it up or was somehow involved, and that's how this incident occurred.

I would ask the court to consider the things that he had done up to the time of this event and take into consideration to reflect on the fact that perhaps this incident, if it were true, does not reflect that he has not accepted -- or, I mean, that he has not rejected his acceptance of responsibility or has not reflected the fact that he has accepted responsibility for the -- this.

Unfortunately, it was a reverse sting with terrible, serious consequences for the defendants and probably a substantial benefit to the public in taking a bunch of these people off the street and removing firearms from the street additionally.

I don't need more time to investigate this.  I have talked to my client.  He's been incarcerated since this event occurred.  He advised me that his mother has dropped the charges.  However, that obviously doesn't really have any interplay on this case today and these events other than to suggest that perhaps the -- the charges in the arrest were maybe done in haste without clear thought as to what was really happening at the time.

And I don't suggest that it didn't.  I don't know what happened.  I wasn't there.  But I'm assuming that the facts are correct as stated.  But I believe, Your Honor, that even though you do have the absolute power and probably the right under the circumstances to ask -- do what [the prosecutor] has asked for, that I would implore that you do not do that.

Obviously, the two levels would be significant in light of the severity of the sentence.  Some of the other defendants in this case, including Neil Morris, the person who -- who began this whole thing have gotten -- at least he got a very substantial downward departure for his cooperation.

I don't have any problem with that.  I know how this works.  But on the other hand, my client, who unfortunately showed up with a couple

16

of people at the request of his father or had actually -- they referred to him as his father, he was not his father but he was a man that was very close to his mother at one time and she named Neil after that gentleman, which is one of the reasons I inadvertently referred to him by the wrong name.

I think out of all the defendants, except perhaps one of them, he will be receiving the most substantial sentence. And I would just ask the court to take that into consideration. We offer no -- no excuses for what happened. I just don't think that the facts as stated reflect the fact that he did not accept responsibility. Thank you, Your Honor.

THE COURT:      Well, we're not going to go forward under these circumstances, for two reasons. One, we have an acknowledgment on the record, [counsel], that you do not have a copy of the June 24th updated presentence report. Why you don't have it, I don't know.

[COUNSEL]:      I don't -- Judge, I don't know.

THE COURT:      Well, I know I'd be reading a reversal if I go forward under that circumstance, or at least a new -- another 2255 motion. So I'm going to direct that a copy of the June 24th report be furnished to you. I don't know, Mr. Clark, whether you have an extra copy with you. I doubt it.

PROBATION OFFICER:      I don't have an extra copy. I can give him my copy now. I have another copy in the office.

THE COURT:      That's one solution. If the only change is this reference to this incident and those two paragraphs, [counsel] can take the time this afternoon to go over it with Mr. Johns. And if you're prepared to go forward after looking at it and reviewing it together, then that would address that concern.

The second issue, candidly, and I've read *Jordan* now that we've discussed it, I'm not about to make a determination based on the sole reference to an arrest. I realize it's the defendant's burden. But at the same time -- you know, I'm pausing in mid[-]sentence because I don't want to misspeak.

The original draft recommended that he receive at least a two-level adjustment for acceptance of responsibility. There has been a change based on that arrest. If the defendant satisfies his burden of

establishing a clear demonstration of the acceptance of responsibility, then under 3E1.1(a), he would be able to get that two-level adjustment.

If the government rebutted that demonstration by establishing conduct that may have resulted in an arrest, even if the charge was dropped, then I could weigh that. But it seems to me, [counsel], that you and Mr. Johns need to take a few moments and go over this particular change to the presentence report.

[COUNSEL]:          Thank you, Your Honor.

THE COURT:          The addendum is dated June 24th, as well. So let's make that available to him, Mr. Clark, and just alert the court security officer when you're ready to announce ready or not. And I'll give you as much time as you need this afternoon to go over that.

You can do it right here in the courtroom, if you'd like, if that's acceptable to the deputy marshals. I see a yes. All right. We'll be in recess until I hear from you.

(Recess was taken at 3:50 until 4:00.)

THE COURT:          All right. Ready to proceed . . .?

[PROSECUTOR]:       Your Honor, Judge, just to streamline things, we share your concerns, Judge, about the lack of an evidentiary basis for the allegations contained in the affidavit.

I've discussed that matter during the break with Mr. Clark [a]nd we're going to withdraw the assertion that the defendant is not entitled to three levels for acceptance of responsibility based upon his post-plea conduct.

THE COURT:          All right. Thank you. [Counsel], have you and Mr. Johns gone over the June 24th version of the report?

[COUNSEL]:          Yes, Your Honor, we have.

THE COURT:          All right.

[COUNSEL]:          I explained to him the ramifications of all of this.

18

THE COURT:        So the government's position, if sustained, then, effectively moots this issue and he would be entitled to, upon motion, of course, the full three levels for acceptance of responsibility.

[COUNSEL]:        Yes, Your Honor.

THE COURT:        That is the government's motion . . . ?

[PROSECUTOR]:        It is, Your Honor.

THE COURT:        Well, this is an unusual circumstance, and I appreciate counsel's efforts. Clearly, the *Jordan* decision is good law in this circuit. Post-plea conduct can, in some circumstances, negate acceptance of responsibility.

        In this instance, I accept [the prosecutor]'s representation that he is comfortable that a basis for acceptance of responsibility remains available, and will award the defendant the full three levels, having granted the government's motion for the additional one level. So that's two levels under 3E1.1(a) and the additional level on the government's motion, subsection B.

        So on Page 8 of the report, the adjusted offense level would now be 34?

PROBATION OFFICER:        Correct, Your Honor.

THE COURT:        Are there any other objections, [counsel]?

[COUNSEL]:        No, Your Honor. Thank you.

(CR Dkt. 181, pp. 3-16).

Petitioner is correct that counsel did not have a copy of the revised presentence report at the sentencing hearing. However, the court gave counsel ample opportunity to review the revised report with Petitioner. Even if counsel performed deficiently by not procuring a copy of the revised report before sentencing, Petitioner demonstrates no resulting prejudice. *See Strickland v. Washington*, 466 U.S. at 691-92.

19

Petitioner's arguments that counsel rendered ineffective assistance by not objecting to Petitioner not receiving a minor role reduction and by not arguing that Petitioner's criminal history score over-represented Petitioner's prior conduct fare no better. During the sentencing hearing counsel argued that Petitioner's criminal history did not warrant imposition of a lengthy sentence. The prosecutor argued to the contrary. The court rejected Petitioner's argument:

| | |
|---|---|
| THE COURT: | All right. Thank you. Anything else, [counsel]? |
| [COUNSEL]: | Your Honor, the only thing I would point out to you is in reviewing the criminal history of the client, his criminal history category is 10 points, which would suggest a criminal history level of five, which is high. I mean, that's - - I've dealt with people that are worse, but it's high. |
| | But eight of the points were for possession of marijuana. The two sales of crack cocaine also resulted in - - I guess one got points and one didn't due to the vagaries of the criminal history analysis, and a - - most of them are a lot of driving convictions. And I just point that out to the court that even though my client does, because the two prior drug offenses, score out to the armed - - I mean, I'm sorry, career offender status, that - - that his prior criminal history, other than that, is really not reflective of a person that needs any more than what we're looking at under the circumstances. |
| | I didn't actually check to see whether that paragraph was included where his sentence may under-represent, but I just wanted to make the argument in case it was something you were reflecting upon. |
| THE COURT: | Actually, I looked at his criminal history, anytime I've got a career [of]fender. And but for those couple of offenses, the rest of these are -- not to suggest they're not serious, but there were some driving offenses, some misdemeanor marijuanas. There's a fleeing and alluding that was serious, Paragraph 48. And, of course, you've got the sale of crack. But the under-representation didn't occur to me, so that's not something I was contemplating. [Prosecutor], anything else from the government? |

20

[PROSECUTOR]:  Briefly, Judge. The defendant's 28 years old. Notwithstanding that, it appears to me that he has over a dozen convictions. Starting early on as a juvenile, I believe they date back to as early as 12 years old.

He has had an active adult criminal lifestyle. You pointed to the fleeing and alluding, Judge. It's just one example of some of the severity of these offenses. According to the PSR, the defendant refused during this traffic stop to respond to authorities and placed his vehicle in reverse and hit a law enforcement vehicle, before jumping out of his car and feeling on foot.

He also has the two felony convictions for drug trafficking. And, Judge, as you pointed out, in other cases with respect to co-defendants, the defendant was looking at life without parole if he had been enhanced. We did not enhance him in this situation under Section 851 due to his cooperative status today. So right off the bat, the defendant has received a substantial benefit.

His PSR history also reflects a number of violations of probation; a contempt conviction, as well. I disagree with Mr. Johns's at least implicit assertion that this was somehow a one-time incident when he showed up at the Lowe's parking lot. In fact, he had been recruited or had at least discussed the matter with Neil Morris several weeks in advance of this incident. He was well aware of what it entailed.

My understanding is that he brought Hill into the planned home invasion. And I'll remind the court that the meeting at the Lowe's parking lot was not a meeting that was to immediately proceed [sic] the invasion itself. That would have been too risky for law enforcement.

It was what I've described in the past as a penultimate meeting designed by law enforcement to force the co-conspirators to expose their two teams so that they would know who was involved. And that's why Special Agent Code took particular care at the Lowe's parking lot after Morris had spoken to Johns and Hill in the car, along with Shantell Lovett about the details of the robbery, to go over those details to include that the undercover was not to be shot.

So I think it's not fair to assert at this juncture that [I] just happened to find myself in a Lowe's parking lot, and it's not something that's consistent with my past conduct, whether it be past criminal conduct or his past discussions with other co-conspirators.

He didn't have a weapon, nor did the others because this was the penultimate meeting. Wright and Ray showed up with a weapon as an invitation to Special Agent Code to confirm that they, in fact, had weapons available to consummate the transaction, which they did.

I think those facts are important along with the other items that I've mentioned. And I recognize that the guideline range is severe. But as you said before, Judge, this was a severe offense which potentially could have led to the loss of life. And given the defendant's past, it's one of those rare instances where a range of 262 to 327 [months] is warranted and reasonable.

THE COURT: All right. Thank you. Well, Mr. Johns, you're a relatively young man, but you've gotten yourself into something that's very, very serious. I've looked at your past record. The prosecutor and the defense lawyer have different perspectives on it. I see some serious offenses on there. I see a lot of not so serious offenses, but they add up nonetheless.

(CR Dkt. 181, pp. 22-26).

Petitioner's argument seems to be that counsel did not argue strenuously enough that Petitioner's criminal history score over-represented the gravity of his prior conduct. Petitioner fails to demonstrate that any additional argument by counsel would have resulted in a lower criminal history score.

Under U.S.S.G. § 3B1.2(b), the Court may decrease a defendant's guidelines offense by two levels if he was a minor participant in the crime. Unless the defendant is "substantially less culpable than the average participant," he will not be eligible for a reduction in his sentencing level. U.S.S.G. § 3B1.2(b). The defendant bears the burden of proving by a preponderance of the evidence that he is entitled to the sentence reduction. *United States v. DeVaron,* 175 F.3d 930, 939 (11th Cir. 1999).

Petitioner presents no evidence to support his claim that he deserves a minor role reduction, nor has he shown any specific prejudice resulting from his counsel's failure to argue at sentencing

for the minor role adjustment. Instead, all Petitioner has asserted is that his "involvement here was relevantly [sic] small" and that he "had no fiduciary interest in the produce, no share of the profits, he made no decisions, he was simply to deliver the drugs carried by the participating courier to co-defendant Mr. Morris at the end of the day [and] he was to be paid a set amount." (CV Dkt. 1, pp. 16, 17). However, couriers whose sole act is to transport the drugs are typically held responsible for the full amount of drugs they transported. *DeVaron*, 175 F.3d at 942. Petitioner established no entitlement to a minor role reduction. Because Petitioner cannot demonstrate that the outcome of his sentencing would have been different if counsel had performed as he now suggests, Petitioner cannot show prejudice resulting from counsel's conduct. Absent a demonstration of prejudice, Petitioner cannot prevail on this claim of ineffective assistance of counsel. *See Strickland v. Washington*, 466 U.S. at 691-92.

### Evidentiary hearing

This case warrants no evidentiary hearing because "it plainly appears from the face of the motion and any annexed exhibits and the prior proceedings in the case that the movant is not entitled to relief." *Broadwater v. United States*, 292 F.3d 1302, 1303 (11th Cir. 2003).

## CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL IN FORMA PAUPERIS DENIED

IT IS FURTHER ORDERED that Petitioner is not entitled to a certificate of appealability. A prisoner seeking a motion to vacate has no absolute entitlement to appeal a district court's denial of his motion. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). *Id.* "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* at § 2253(c)(2). To make such a showing,

Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)).  Petitioner has not made the requisite showing in these circumstances.  Finally, because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

Accordingly, it is **ORDERED AND ADJUDGED** that Petitioner's Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255 (CV Dkt. 1) is DENIED.  The clerk is directed to enter judgment against Petitioner and to close this case.

**DONE AND ORDERED** in chambers this 25th day of July, 2011.

JAMES D. WHITTEMORE
United States District Judge

Copies to:
Petitioner, *pro se*
Counsel of record

24